AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Middle District of Louisiana

| | |
|---|---|
| United States of America<br>v.<br><br>Josmar Jesus ZAMBRANO-Chirinos,<br>Osleidy Vanesa CHOURIO DIAZ, and<br>Allbert Herrera MACHADO<br><br>*Defendant(s)* | )<br>)<br>)   Case No.<br>)<br>)         24-mj-48<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __April 26, 2024__ in the county of __East Baton Rouge Parish__ in the __Middle__ District of __Louisiana__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1591(a)(1) and (a)(2), and 2 | Sex trafficking by force, fraud or coercion, and/or aiding and abetting same. |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

THOMAS R BOWEN  *Digitally signed by THOMAS R BOWEN*
*Date: 2024.05.03 17:26:25 -05'00'*

*Complainant's signature*

Thomas Bowen, HSI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirement of Fed. R. Crim. P. 4.1 by __telephone__ (*specify reliable electronic means*).

Date: May 3, 2024

*Judge's signature*

City and state: Baton Rouge, LA      Scott D. Johnson, U. S. Magistrate Judge
*Printed name and title*

USA Sealed Group, USM and USPO

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT FOR THE ARRESTS OF JOSMAR JESUS ZAMBRANO-CHIRINOS, ALLBERT HERRERA MACHADO, AND OSLEIDY VANESA CHOURIO DIAZ**

I, Thomas Bowen, being duly sworn, do hereby depose and state:

I. **Introduction and Agent Background**

1. I am a Special Agent with Homeland Security Investigations (HSI) and have been employed as such since April 2023. Prior to working for HSI, I served as a Special Agent for the U.S. Secret Service and the U.S. Capitol Police. During my career, I have utilized numerous different investigative techniques to pursue human trafficking and various other types of investigations, including but not limited to electronic surveillance, visual surveillance, general questioning of witnesses, the use of search warrants, the use of grand jury subpoenas, the use of confidential informants, the use of pen register/trap and trace devices, and the use of undercover agents. I have specialized knowledge of immigration laws, alien smuggling techniques. and human trafficking methods perpetrated to circumvent those laws. I have gained this knowledge because of both professional training and the professional experience described above.

2. I am a federal criminal investigator for the United States within the meaning of 19 U.S.C. § 1589a; therefore, I am authorized to execute and serve any order, warrant, subpoena, summons, or other process issued under the authority of the United States.

3. As a criminal investigator, I am authorized to enforce 18 U.S.C. § 1591, Sex Trafficking by Force, Fraud or Coercion, among other federal criminal statutes.

4. This affidavit is made in support of an application for a warrant to arrest the following individuals:

- **Josmar Jesus ZAMBRANO-Chirinos (ZAMBRANO)**, a Venezuelan citizen, who resides, at time, at 325 Gesner Street, Linden, NJ 07036 and has the other, following identifiers: Tel: 908-494-6932, DOB: 11/02/2000, and Alien # 249148602;

- **Allbert Herrera MACHADO (MACHADO)** a Venezuelan citizen, who is currently being held at the East Baton Rouge Parish Prison (EBRPP) on violations of Louisiana law and has the other, following identifiers: DOB: 10/03/2000, and Alien # 249227176; and

- **Osleidy Vanesa CHOURIO DIAZ (CHOURIO DIAZ**) aka "Alina," a Venezuelan citizen who has the following identifiers: DOB: 12/10/1997, Alien # 245301110, and FBI # X8KHA89TR,

for sex trafficking by force, fraud, or coercion, in violation of Title 18, United States Code, Sections 1591(a)(1) and (a)(2), and/or aiding and abetting same, under Title 18, United States Code, Section 2.

5. This affidavit is based on my personal observations during this investigation, my training and experience, and information communicated or reported to me during the investigation by other participants in the investigation and witnesses (as the contents of this affidavit indicates), and my review of records, documents, and other physical evidence obtained during this investigation. This affidavit is intended to show only that there is sufficient probable cause to support the Criminal Complaint and for the requested Arrest Warrants; it does not include every fact known by me, Homeland Security Investigations (HSI), or other assisting law enforcement agencies.

2

6. Based on my training and experience and the facts set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code, Sections 1591(a)(1) and (a)(2), and 2, have been committed by ZAMBRANO, MACHADO, and CHOURIO DIAZ.

## II.   Probable Cause

### A.   Victim 1 is Transported to Baton Rouge, Louisiana

7. On Wednesday, April 17, 2024, United States Border Patrol (USBP) El Paso Sector Intelligence United (SIU) contacted HSI Baton Rouge regarding a human trafficking victim that was being transported into Baton Rouge by the "Tren de Aragua" (TDA), a Venezuelan criminal organization or gang, for the purposes of sexual exploitation. Special Agents with HSI/BTL HSI Baton Rouge Special Agents (SAs) spoke directly with USBP SIU Agents, who identified the victim as "**Victim 1**."

8. USBP SIU Agents interviewed Victim 1 on or around March 7, 2024, in El Paso, Texas. Victim 1 advised that she was under the control of ZAMBRANO, an individual she identified as a "leader" of the sex trafficking operation being conducted by the TDA in the United States. Victim 1 stated that ZAMBRANO paid for her to be smuggled into the United States, and that ZAMBRANO was forcing her to "pay off" her debt via sexual exploitation. Investigation conducted by the USBP SIU and subsequent interviews conduct with two victims under ZAMBRANO's control (including Victim 1) suggests that ZAMBRANO is operating "stash houses" used for human trafficking in Louisiana, Texas, Virginia, New Jersey, and Florida. Each of these locations throughout the United States are being used in furtherance of the TDA sex trafficking operation led by ZAMBRANO. Victim 1 advised the USBP SIU that she believes there are up to thirty (30) women currently being trafficked by TDA and

3

ZAMBRANO among the aforementioned places. ZAMBRANO told Victim 1 that she would be going to work as a prostitute in New Jersey.

9. On April 17, 2024, following the initial call between USBP SIU Agents and HSI Baton Rouge Special Agents, HSI Baton Rouge Special Agents were put into direct contact with Victim 1 via WhatsApp. Victim 1 advised that earlier on April 17, 2024, ZAMBRANO told her that he paid a "charity" organization to fund a flight from El Paso, Texas to Baton Rouge, Louisiana for her. Victim 1 believed, based on ZAMBRANO's prior statements, that she was going to be transported to the New Jersey area to begin engaging in commercial sex for ZAMBRANO to pay off her debt.

10. HSI Baton Rouge Special Agents informed Victim 1 that a victim rescue operation was being planned if she arrived in Baton Rouge, and that victim services were being coordinated in El Paso so that she could be transported to a safe house and inserted into a victim assistance program. Victim 1 immediately declined all offers for victim assistance and stated that if she did not arrive in Baton Rouge to work for ZAMBRANO, that her children would be hurt or murdered by TDA. Despite numerous attempts, Victim 1 continued to refuse victim services, and stated multiple times that she wanted to travel to Baton Rouge and collect intelligence from inside the TDA operation to further law enforcement investigative efforts.

11. On the morning of April 18, 2024, HSI Baton Rouge Special Agents spoke to HSI New Jersey Special Agents, who advised that they had an active investigation into TDA and the sex trafficking activity of ZAMBRANO. HSI New Jersey Special Agents previously identified and interviewed Victim 1 on or about April 4, 2024, and they were preparing for her to be transported to New Jersey by TDA to work in one of the locations under the control of ZAMBRANO. HSI Baton Rouge began coordinating with HSI New Jersey and Victim 1 to

establish a course of action now that she was being transported to Baton Rouge instead of New Jersey by her traffickers, as was previously believed.

12. Victim 1 continued to state that she did not want to enter any victim assistance program and instead wanted to be transported to Baton Rouge by TDA to protect her children and provide law enforcement with intelligence on ZAMBRANO. Victim 1 stated that she would be getting "dolled up" prior to departing for her ultimate destination of New Jersey. Victim 1 was adamant that she would not be in danger while in Baton Rouge, and that ZAMBRANO told her to prepare to be moved to New Jersey within two weeks of arriving in Baton Rouge.

13. HSI Special Agents informed Victim 1 that she would need to maintain constant contact with them via WhatsApp to verify her safety throughout her stay in Baton Rouge. Victim 1 was instructed to text HSI Special Agents via WhatsApp and to immediately share her location if at any point she believed her safety was going to be put into jeopardy. HSI Special Agents further informed her that if communication with her was lost for a period exceeding forty-eight (48) hours, a victim rescue operation would be launched.

14. On April 18, 2024, Victim 1 traveled from El Paso, TX to Baton Rouge, LA via United Airlines. Victim 1 was able to continue clandestinely communicating with HSI Special Agents via WhatsApp. Victim 1 told Special Agents that she was informed that she would be brought to 1641 S. Harrell's Ferry Road, Baton Rouge, LA 70816, Apartment 3905 (Target Apartment), upon her arrival. Victim 1 did not know how many additional individuals would be at the apartment, but she believed that a co-traveler, known by Victim 1 as **Victim 2**, would be there.

15. Victim 2 is another known sex trafficking victim of ZAMBRANO. Victim 2 was also transported to Baton Rouge and online sex ads were found listing her in Baton Rouge up until at least March 4, 2024.

16. Victim 1 was able to send screenshots of her conversation with ZAMBRANO, wherein he provided her with instructions on who was picking her up from the Baton Rouge Airport following her arrival. Victim 1 identified the driver of her pickup vehicle as "**Jairo**" and shared with HSI Special Agents a phone contact of his information. Victim 1 was able to screenshot pictures that Jairo sent her of himself at the airport so that she could identify him at the pickup terminal.

17. After Victim 1's arrival at the Baton Rouge Airport, HIS Baton Rouge Special Agents conducted mobile surveillance as she was transported from the airport to the Target Residence by Jairo.

### B.     911 Call from Spanish Speaking Female at the Target Residence

18. On Friday, April 26, 2024, East Baton Rouge Sheriff's Office (EBRSO) uniform patrol received a 911 call from a Spanish speaking female who stated she was being held in 16441 South Harrell's Ferry Rd., Baton Rouge, LA 70816, Apt 3905 (*i.e.*, Target Residence), and being forced to have sexual intercourse with unknown males for money. At approximately 5:11 pm, EBRSO deputies responded to the Target Residence. After they arrived, EBRSO uniform patrol secured the Target Residence, locating one male suspect, MACHADO and two female victims, Victim 1 and Victim 2.

19. While performing a protective sweep of the Target Residence, EBRSO uniform patrol deputies observed stacks of money, condoms, and lubricant in the apartment. According to the EBRSO uniform patrol deputies, Victim 1 stated she was being forced to have sexual

intercourse to pay off a $30,000 USD debt to a trafficker for bringing her to the United States. Victim 1 also told deputies that she was brought to the United States by TDA.

### C.  Search of Target Residence

20. Based on the things observed in the Target Residence during the protective sweep, as well as the statements from Victim 1, EBRSO detectives obtained a search warrant for the Target Residence. While executing the search warrant, EBRSO detectives found numerous used condoms, various amounts of cash (totaling over $1,000 USD), sexual toys, multiple cellphones with messages on the home screen of possible "clients" asking to meet, and several ledger books. The ledger books appeared to document how much money each victim made each day and how much of their "debt" remained.

21. While interviewing Victim 1, EBRSO detectives learned of an ongoing human trafficking ring spanning across Miami, Baton Rouge, Orlando, and New Jersey.

22. Both Victim 1 and Victim 2 told detectives that they were being prostituted to pay off a debt. Further, the victims told detectives that MACHADO would conduct all the messaging to the "clients" to set up sexual encounters for the victims with several unknown men. Victim 1 and Victim 2 were instructed to hide when the "clients" came over to have sexual intercourse with one or the other, so that it appears as if there was always only one female in the apartment. MACHADO would then collect the money from the victims each morning.

23. After being advised of his *Miranda* rights, MACHADO stated that he was contacted by an unknown friend offering him a job. The job was to message "clients" to set up sexual encounters with Victim 1 and Victim 2. He stated he came to Louisiana about a week prior to starting this job and it had only been the two victims and him at the residence. He

7

further stated that he would send the victims to a local store to deposit the money they collected to his unknown partner. He stated Victim 1 and Victim 2 would each have three to four visits from "clients" per day. MACHADO told detectives that he knew he was in trouble, but he did not realize until recently how serious this was. He stated he needed a job and was only trying to save money.

24. On April 29, 2024, MACHADO was arrested and booked into East Baton Rouge Parish Prison on two counts of Human Trafficking (LRS 14:46.2). His bond was set at $200,000.

D. **Forensic Interview of Victim 1**

25. On April 30, 2024, HSI Forensic Interviewers (FI) from the HSI Victim Assistance Program (VAP) conducted a forensic interview of Victim 1. During the interview, Victim 1 stated the following:

- That ZAMBRANO directed her and Victim 2's movements from Venezuela to the United States and deposited funds into Victim 1's accounts along the way;

- That ZAMBRANO provided Victim 1 with a debit card number that she could use to buy an airline ticket;

- That ZAMBRANO has approximately thirty (30) females working for him in the United States;

- That prior to making her journey toward the United States, Victim 1 received call from an UNKNOWN FEMALE GANG LEADER stating that Victim 1 must travel to the United States, and that her debt is $30,000 USD. UNKNOWN FEMALE GANG LEADER connected Victim 1 to ZAMBRANO, who then advised Victim 1 that he resides in New Jersey with his father and that he has stash houses for other trafficking victims. ZAMBRANO told Victim 1 he would provide her with a stash house to work, immigration paperwork, an immigration attorney, and get her family to United States;

8

- That ZAMBRANO told Victim 1 that he would allow her to keep all the profits from the first week working as a prostitute in the Target Residence, but that after that, she would get 15% for the services she provided to "customers" while the rest would be applied to the debt she owed;

- That ZAMBRANO made Victim 1 pay $50 per day for housing in the Target Residence. ZAMBRANO told Victim 1 that if she brought two more friends with her to work as prostitutes, it would lower her debt by $2,500.

- That ZAMBRANO directed Victim 1 how to speak to immigration officials and law enforcement when she arrived at the United States/Mexico border, and that he advised her to explain that she had a "generic problem in Venezuela" and that she was seeking asylum in the United States;

- That ZAMBRANO told Victim 1 that MACHADO is going to be her handler.

- That once Victim 1 arrived at the Baton Rouge Airport, an UNIDENTIFIED MALE 1 picked her up and transported her to the Target Residence;

- That once she arrived at the Target Residence, MACHADO gave her $400 USD and the UNIDENTIFIED MALE 1 took her to buy clothes.

- That ZAMBRANO was considered the "father" of the house who created the rules, and MACHADO helped to enforce them;

- That the "rules" of the house included but were not limited to the following: (i) if one girl was providing sexual services to a client no other girl should be visible, (ii) that there was "no limit" to the amount of customers they needed to service, (iii) that this was a "24/7 operation" and to "always be ready", and (iv) that Victim 1 and Victim 2 could only rest between the hours of 4:00AM and 8:00AM, and only if there were no customers during that time. Otherwise, they should be working;

- That ZAMBRANO instructed Victim 1 and Victim 2 as to how (and how much) to charge customers, such as (i)15 minutes = $120 (or $140 if using Zelle app), (ii) 30 minutes = $160, and (iii) 1 hour = $250; that if customers were paying via the Zelle app, Victim 1 and Victim 2 were to show the customer the phone number associated with the Zelle account that was to collect the money, and once it was paid, the girls would be required to send a screenshot to ZAMBRANO before the sexual service

9

- could begin; but that if customers were paying in cash, they were to collect the money themselves, store it, and the following morning it would be collected by either ZAMBRANO or MACHADO; and

- That one day when ZAMBRANO was gone, he spoke to Victims 1 and Victim 2 remotely via the "nanny camera" that was placed in the apartment, saying that when he returned, if he had to kill them, he would. He further stated that he will show them they are in debt.

26. Victim 1 told the HSI FI that she had information that TDA gang members had killed her mother on or around April 29, 2024, or April 30, 2024, and that she spoke to her aunt who supposedly verified the death.

27. Victim 1 also told HSI FI that she received word through her family that ZAMBRANO said (paraphrased): "Do not talk. Do not mess with me. I'm a killer."

28. Victim 1 further told HSI FI that she was labeled as the "Daughter of Josmar (ZAMBRANO)" by members of TDA, which, according to HSI Special Agents, indicates that Victim 1 is "owned" or "belongs" to ZAMBRANO.

E. **Forensic Interview of Victim 2 and Implication of CHOURIO DIAZ**

29. On April 30, 2024, HIS FI conducted a forensic interview of Victim 2, who stated the following:

- That when clients paid with the Zelle phone payment app, Victim 2 would show the phone number (belonging to CHOURIO DIAZ) the customer needed to send the funds, but Victims 1 and Victim 2 were instructed to use their hand to block the customer from seeing CHOURIO DIAZ's name on the phone;

- That ZAMBRANO and CHOURIO DIAZ picked up Victim 2 at the Baton Rouge Airport, then took her to the retail store Ross to buy clothes and makeup. ZAMBRANO told Victim 2 that CHOURIO DIAZ was his girlfriend, but Victim 2 recognized that CHOURIO DIAZ was the same name from the Zell payments; and

- That CHOURIO DIAZ is one of the individuals in charge.

30. Relatedly, during Victim 1's forensic interview, Victim 1 stated that CHOURIO DIAZ is the "b*tch" of the operation and ZAMBRANO is the "brains" of the operation.

31. Victim 1 provided HSI Special Agents a photo of the back of CHOURIO DIAZ's Bank of America debit card that was sent to her to pay for travel expenses.

32. CHOURIO DIAZ was encountered by U.S. Customs and Border Protection on or about September 30, 2023, within the El Paso Border Patrol area of operations. A report from that encounter indicates that CHOURIO DIAZ has purchased women's clothing and received adult paraphernalia for sexual activity. Further, that report indicates that CHOURIO DIAZ is assisting ZAMBRANO with his prostitution operations in the United States.

F.  **ZAMBRANO is Currently in the Middle District**

33. Utilizing the facts contained in the preceding paragraphs, HSI/BTL Special Agents and Task Force Officers applied for and obtained a cell phone location warrant ("ping warrant") for a cell phone number owned by ZAMBRANO (908-494-6932), which was signed by Judge Gail Horne Ray of the 19th Judicial District Court for the Parish of East Baton Rouge, State of Louisiana.

34. As of May 3, 2024, ZAMBRANO is believed to be in Baton Rouge, Louisiana. Due to the search warrant being served at one of his stash houses (Target Residence) in the Middle District, ZAMBRANO is unlikely to remain in the Middle District for much longer. ZAMBRANO will likely destroy or change his cell phone which would prevent agents from being able to determine his location.

35. HSI believes that there are several other stash houses in Louisiana and throughout the eastern United States that could be located from evidence obtained by an arrest of ZAMBRANO and CHOURIO DIAZ.

36.     Based upon the above, I respectfully request that warrants for the arrest of **Josmar Jesus ZAMBRANO-Chirinos**, **Allbert Herrera MACHADO**, and **Osleidy Vanesa CHOURIO DIAZ, a.k.a. "Alina,"** be issued for violations of 18 U.S.C. § 1591(a)(1) and (a)(2), Sex Trafficking by Force, Fraud or Coercion, and/or aiding and abetting same under 18 U.S.C. § 2.

THOMAS R BOWEN
Digitally signed by THOMAS R BOWEN
Date: 2024.05.03 17:28:06 -05'00'

THOMAS BOWEN
Special Agent
Homeland Security Investigations

Affidavit submitted by email/pdf. and attested tome as true and accurate by telephone consistent with Federal Rules of Criminal Procedure 4.1 and 41(d)(3) on the  3rd  day of May, 2024.

SCOTT D. JOHNSON, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA